(No. 14802.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DAVID S. GROH, Plaintiff in Error.

*Opinion filed February 21, 1923—Rehearing denied April 4, 1923.*

1. CRIMINAL LAW—*when defendant cannot complain of failure to instruct the jury not to consider stricken evidence.* A defendant who has offered no instruction nor requested the court to admonish the jury not to consider evidence which was stricken on his motion cannot contend in the Supreme Court that it was error for the court to fail to so instruct the jury.

2. SAME—*when refusal to grant new trial is not error.* Refusal to grant a new trial to permit a witness who had testified to facts tending to show murder to withdraw such testimony is not error where one of the defendants was acquitted, and where, excluding such testimony, there was ample evidence to sustain the verdict of manslaughter as to the other.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HARRY M. FISHER, Judge, presiding.

DAVID STANSBURY, ALBERT KOCOUREK, and JOSEPH B. LAWLER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and FLOYD E. BRITTON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

The plaintiff in error and his wife, Josephine, were indicted in the criminal court of Cook county for the murder of Martin T. Collins, a police officer in the city of Chicago. The first count in the indictment charged the defendants with feloniously, willfully and with malice aforethought assaulting Martin T. Collins, "and did push, force, thrust and knock" Collins into and against a certain automobile while Collins was riding on the running-board of the automobile driven by the defendants, so injuring him that he died. The second count also charged an assault, and that the defendants, with malice, unlawfully and feloniously pushed, forced and knocked Collins into and between two motor vehicles, causing his death. The third count charged an assault upon Collins in some way, by some violent means, the more particular description of which was unknown to the grand jury, causing the injuries of which he died. On arraignment the defendants pleaded not guilty and a trial was had. A verdict was rendered finding Josephine Groh not guilty and finding plaintiff in error guilty of manslaughter. Motions for a new trial and in arrest of judgment were made and overruled and judgment was entered on the verdict.

Plaintiff in error claims that the first and third counts of the indictment charge no offense against him; that the proof does not justify his conviction; that the court erred in the admission and exclusion of testimony; also in its instructions to the jury, and in overruling the motions for a new trial and in arrest of judgment.

The indictment is set out herein and is sufficient.

The undisputed evidence is that about nine o'clock on Sunday night, January 2, 1921, the plaintiff in error and

his wife were driving east on Garfield boulevard at the intersection of that boulevard and Ashland avenue, in the city of Chicago. There is a parkway in the center of the boulevard and on either side of this parkway is a driveway about thirty-two feet in width. East-bound travel uses the south driveway while west-bound travel uses the north driveway. A street car line is operated north and south on Ashland avenue. As plaintiff in error was driving east across Ashland avenue, his automobile, for some reason unexplained in the evidence, struck a north-bound street car, causing the automobile to be thrown backward a short distance. After the car had passed, plaintiff in error continued to drive east at an increased rate of speed. The testimony of the State's witnesses shows that the deceased was dressed in full uniform; that he was standing near and saw the plaintiff in error's automobile strike the street car; that as plaintiff in error drove away the deceased approached the automobile, and as it did not stop he sprang onto the running-board of the car; that the plaintiff in error thereupon increased the speed of his car to forty or fifty miles per hour and continued driving toward the east for six blocks; that he zigzagged his car back and forth on the boulevard and ran at a high rate of speed to a point about half a mile east of Ashland avenue, where he drove the side of his car on which the deceased was riding into another automobile standing at the curb, so severely injuring the deceased that he died a few days thereafter.

The State's witness Daniel D. Quinn testified that he turned off Ashland avenue onto Garfield boulevard, driving east, just after the officer had gotten onto the car driven by plaintiff in error; that he saw him mount the car on the right side; that he followed the plaintiff in error's car and noticed that it zigzagged all the way from Ashland avenue, after the officer got onto it, up to Racine avenue, which is six blocks east; that the curtains were up on the right side of plaintiff in error's car, and also on the left side except

opposite the driver's seat. He testified that in his opinion the plaintiff in error's car was going fifty miles an hour; that his own car was going between thirty-five and forty miles and was being rapidly out-distanced by plaintiff in error's car; that he followed the car and observed it because of the unusual happening in connection with it and the speed of it. With witness in his car were Joseph Quinlan, Nora Quinlan and a young lady by the name of Smith. Quinlan and his sister testified substantially as the witness Quinn.

Joseph Schroeder testified that on the evening in question he was in a car belonging to Dr. Porterfield, on Garfield boulevard, about one block east of Ashland avenue; that his attention was suddenly drawn by noise and loud talking; that he looked around and saw the car of plaintiff in error with a man standing on the running-board, and he heard the man on the running-board shout "Stop!" that immediately thereafter he saw sparks coming out of the exhaust pipe, heard an increased roar in the motor and saw the speed of the car increased rapidly; that the car was traveling at a speed of approximately forty miles an hour and was zigzagging back and forth on the pavement. On cross-examination, in answer to questions put by counsel for the defense, he stated that the driver of the car appeared to be trying to throw the man off of the running-board by zigzagging.

Morris B. Hays testified that he was near the corner of Racine avenue and Garfield boulevard when plaintiff in error's car passed with the officer on the running-board; that he saw the officer striking at the curtains and the curtains were going in and out; that he saw the collision with the automobile standing at the curb, and that after the collision plaintiff in error's automobile turned around, facing the direction from which it had come; that its right rear wheel was broken off and fender and running-board crushed; that he ran up to the scene of the collision and saw a bundle on the street, which he found to be the officer; that the

plaintiff in error came over to where the officer was lying and looked at him and then went back and got into his car and stayed there. This witness and other witnesses testified that when the officers came to arrest the plaintiff in error he refused to submit to arrest but remained in his automobile, declaring that the officers could not arrest him, but when the crowd which gathered around became threatening he was induced to go with an officer into a drug store near by until the latter called the patrol wagon. The State's witnesses also testified that plaintiff in error's wife refused to get out of the car or to submit to arrest, threatening those standing by with an attack from a bull dog which she had in her lap. When the patrol wagon arrived one of the officers struck the bull dog with his club, knocking it senseless, and two officers removed her forcibly from the automobile and put her in the patrol wagon.

The State's witness Benjamin Taman testified that he heard the car coming very rapidly and saw the officer clinging to it; that he saw the woman in the car prying the fingers of the officer loose from his hold. He also attempted to testify that plaintiff in error and his wife were endeavoring to push the officer from the car, but all such statements were stricken on motion.

Plaintiff in error and his wife took the stand and denied that they knew the officer was on the car, but stated that the impact of their car against the street car had thrown their steering gear out of alignment and their zigzagging over the pavement and striking the other car was due to that fact; that they had no knowledge of anyone being on the car until just immediately before their car struck the car standing at the curb; that the cause of their running into the car at the curb was the fact that Mrs. Groh caught hold of the wheel when she heard someone on the running-board and the car was accidentally driven towards the curb. Plaintiff in error also offered the testimony of a number of

witnesses as to his reputation for being a peaceable and law-abiding citizen. The State proved by W. I. Bell, a mechanician, that he examined the plaintiff in error's automobile on the day following the collision, and that while the rear right wheel was broken off and the fender and running-board badly crushed, the steering gear was in perfect order.

There can be no doubt, upon reading the record, that the jury were justified in returning a verdict of guilty in this case. While plaintiff in error states that he did not know that deceased was on the running-board, yet it is impossible to reconcile that testimony with the fact that he drove in a zigzag manner along the highway at a rate of speed testified by some of the witnesses to be as high as fifty miles an hour, swinging from side to side of the street. If the jury believed the testimony of those witnesses who stated that the officer was calling to the driver of the car to stop and was beating on the curtains, they were justified in believing plaintiff in error knew of the presence of the officer on the car. While plaintiff in error testified that the zigzag course of his car was due to an injury to the steering gear, which prevented control of the car, he does not explain why he was running at a high rate of speed with his steering gear in that condition.

Plaintiff in error contends that the court erred in the admission of testimony, and refers in his argument to the testimony of certain of the witnesses who stated their conclusions that the plaintiff in error was trying to throw the officer off of the car by the method and speed of his driving. All of such testimony, except as herein indicated, was stricken out on motion of counsel for plaintiff in error. He contends, however, that the court erred in not admonishing the jury to pay no attention to such testimony. No such instruction was offered or request made by counsel for the plaintiff in error, and it was not error for the court to fail to admonish the jury, at the time the evidence was stricken, to pay no attention to it. Plaintiff in error would have

been entitled to such an instruction to the jury if he had asked it.

The giving of certain instructions is assigned as error. We have examined those complained of and find them without prejudicial error. These instructions are statements of propositions of law defining malice and malice aforethought, murder and manslaughter, and were correct and not improperly given. The instructions as a series correctly informed the jury as to the law and no prejudicial error was committed by the court in that regard.

Plaintiff in error argues very earnestly that the court erred in not granting a new trial, and he sets out affidavits which were filed in connection with his motion therefor. These affidavits are to the effect that the plaintiff in error, with others, called upon the witness Taman concerning his testimony, and that in the interview, which took place after the trial of the case, Taman told the affiants that he was mistaken in saying that the plaintiff in error tried to push the officer from the car, and that he was in error in stating that plaintiff in error's wife tried to pry the fingers of the officer loose from the car. The affidavits further state that Taman stated that at the time of the trial he was suffering from nervous disorders, and asked if a man suffering as he was could be punished for giving mistaken testimony, and whether if he told the truth he would escape punishment; that he stated to affiants that he did not remember what his testimony was as to the speed of the car but that it was going pretty fast. The affiants in these affidavits express the belief that Taman was not mentally responsible.

Taman's testimony, so far as it relates to seeing plaintiff in error or his wife attempt to push the officer from the car, was the only testimony of that character sought to be given, and, as we have seen, the only part of the testimony of Taman which was not stricken out by the court was the statement that he saw Mrs. Groh trying to pry the fingers of the officer from the car. All other statements per-

taining to an attempt on the part of plaintiff in error or his wife to push the officer from the car were stricken and were not in the record. As we have seen, the jury acquitted Mrs. Groh, therefore the falsity of such testimony, or other testimony by this witness on another trial, would have no bearing on what the plaintiff in error himself did on that occasion. All testimony pertaining to what he did was stricken from the record. At most, if this witness were to go on the stand again, all that his testimony could amount to would be that he did not see anything of the kind. In view of the fact that the record shows the automobile was going very rapidly when it passed Taman, he stating that it was about a second going by, and the further fact that the curtains were closed on the side on which the officer was standing, Taman being on the sidewalk some feet away and on the same side of the automobile on which the officer was standing, it is, of course, impossible that he could have seen what was going on behind the curtain in the darkness. There is nothing to indicate that the jury believed his testimony. In fact, the acquittal of Mrs. Groh tends to indicate they did not. At any rate, a correction of it would be purely negative, and while such testimony, if competent and true, might constitute direct evidence of that willful, malicious conduct which would make the killing murder, there is, as we have seen, ample evidence in the record of conduct on the part of the plaintiff in error making the killing manslaughter. It was not error to deny the motion for a new trial on the ground set out in the motion and affidavits.

Plaintiff in error also contends that the State's attorney committed prejudicial error while arguing to the jury. The argument complained of related principally to the conduct of Mrs. Groh after the collision, and as she was acquitted the argument did not prejudice plaintiff in error.

As there is no reversible error in the record the judgment will be affirmed.

*Judgment affirmed.*